UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────

BRIAN H. MCGOWAN,

        Plaintiff,

        v.                                     Case No. 04-C-0170

WISCONSIN CENTRAL LTD.,

        Defendant.

─────────────────────────────────────────────

## O R D E R

Plaintiff Brian H. McGowan sues his former employer, defendant Wisconsin Central Ltd. ("WCL"), under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq., for injuries he suffered on the job. In his complaint, the plaintiff cites to various sections of the Safety Appliance Act ("SAA"), 49 U.S.C. § 20302 (1994 ed.). WCL moves for summary judgment with respect to any of the plaintiff's claims premised upon the SAA. For the reasons below, the court will grant in part and deny in part the WCL's motion for summary judgment.

## BACKGROUND

Plaintiff Brian H. McGowan was employed by WCL as a conductor/locomotive engineer. (WCL's Undisputed Material Facts ¶ 5.) On March 26, 2001, McGowan was working as a conductor in Neenah, Wisconsin.

(*Id.* ¶ 6.) McGowan was working as part of a crew that was responsible for delivering rail cars to and picking up rail cars from the industry siding at Colloid Industries. (*Id.* ¶ 8.) At Colloid Industries, the locomotive and the rest of the consist had shoved back onto the industry track and coupled with cars that were set out at Colloid Industries. (*Id.* ¶ 9.) After the cars were coupled, the plaintiff's responsibility was to connect the air hoses between the stationary rail cars set on the Colloid track so that the trail cars would be connected to the train's air brake system. (*Id.*) While the plaintiff was crouched down between the cars and was connecting the air hoses between rail car DME 46082 and an adjacent car, the bracket that connected the air hose and angle cock assembly to rail car DME 46082 broke causing the angle cock assembly to blow off of the brake pipe and hit the plaintiff in the face. (*Id.* ¶ 10.)

On February 18, 2004, McGowan filed a complaint pursuant to the Federal Employers Liability Act, 45 U.S.C. § 51, et seq. ("FELA"). Specifically, McGowan alleges that WCL was negligent by (1) failing to provide him with a safe place to work; (2) failing to exercise ordinary care to use reasonably safe methods in its maintenance of equipment and failing to properly repair the equipment; (3) failing to inspect the car; and (4) failing to warn the plaintiff. In addition to his negligence claim, McGowan also alleges a theory of absolute liability premised upon violations of Sections 1, 9, and 11 of the SAA. (Complaint ¶¶ 6, 7(j).)

WCL filed a motion for summary judgment on each of the alleged SAA violations. WCL argues that section 11 regulates handbrakes, not an air brake system. In this case, the plaintiff was injured when the angle cock assembly on the air brake system hit him in the face. WCL also argues that sections 1 and 9 are inapplicable. Although sections 1 and 9 involve air brake requirements, WCL argues that the sections only apply to the air brake system on a moving train involved in non-switching moves. WCL argues that McGowan sustained injury while switching cars at an industry siding as he was connecting air hoses between stationary cars. WCL argues that McGowan's injuries were not caused by the failure of the air brake system to control the speed of the train.

## ANALYSIS

Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at

256-57. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson*, 477 U.S. at 255 (1986).

FELA makes rail carriers liable for a violation of the SAA. *Norfolk and Western Ry. Co. v. Hiles*, 516 U.S. 400, 408 n.11 (1996) (citing *O'Donnell v. Elgin, J. & E. Ry. Co.*, 338 U.S. 384, 391 (1949)). "Although the (SAA) does not itself create a private right of action, employees who allege that they have been injured as a result of (SAA) violations may sue under the FELA." *Lisek v. Norfolk and Western Ry. Co.*, 30 F.3d 823, 825 (7th Cir. 1994) (citing *Crane v. Cedar Rapids & Iowa City Ry. Co.*, 395 U.S. 164, 166 (1969)). Unlike a negligence claim under FELA, *see* 45 U.S.C. § 51, a rail carrier's duty under the SAA is absolute; the employee need only show a violation of the SAA, and no showing of negligence is required. *See McGinn v. Burlington Northern R. Co.*, 102 F.3d 295, 298-99 (7th Cir. 1996); *Lisek*, 30 F.3d at 825-26. Once a violation of the SAA is established, only causal relation is in issue. *DeBiasio v. Illinois Cent. R.R.*, 52 F.3d 678, 683 (7th Cir. 1995).

I.   SAA hand brake provisions

In his brief, McGowan did not respond to WCL's argument relating to SAA's hand brake provisions, although "Plaintiff admits the Safety Appliance Act provisions 49 U.S.C. § 20302(a)(1)(B) (formerly 45 U.S.C. § 11) do not apply to this case."  (Plaintiff's Response and Objections to Defendant's Proposed Order ¶ 6.)  Therefore, the court grants the defendant's motion for summary judgment with respect to any claim premised upon SAA's hand brake provisions.

II.   SAA air brake provisions

WCL argues that the SAA provisions involving air brakes are inapplicable to this action for three reasons: 1) the train was not moving at the time the plaintiff was injured; 2) the train was involved in a switching operation; and 3) the plaintiff's injury did not result from the failure of the air brakes to control the movement of the train.  In support of its motion, WCL relies primarily upon *Erskine v. Consolidated Rail Corp.*, 814 F.2d 266, 271 (6th Cir. 1987), and two district court cases which cite *Erskine.  See Allen v. Soo Line R.R. Co.*, 2001 WL 1222183, *4 (S.D. Ind. April 4, 2001); *Leight v. Nat'l Railroad Passenger Corp.*, 1992 WL 68284, *3-4 (E.D. Pa. March 25, 1992).

The SAA air brake provisions state:

[A] railroad carrier may use or allow to be used on any of its railroad lines –
(5) a train only if –

> (A) enough of the vehicles in the train are equipped with power or train brakes so that the engineer on the locomotive hauling the train can control the train's speed without the necessity of brake operators using the common handbrakes for that purpose; and
>
> (B) at least 50% of the vehicles in the train are equipped with power or train brakes and the engineer is using the power or train brakes on those vehicles and on all other vehicles equipped with them that are associated with those vehicles in the train.

49 U.S.C. § 20302(a)(5)(A), (B). The general purpose of the SAA is to protect railroad employees and others by requiring use of safe equipment. *See Lilly v. Grand Trunk Western R. Co.*, 317 U.S. 481, 486 (1943). The specific purpose of the air brake provisions is to eliminate hazards incident to using hand brakes while the train is in motion and to provide for more efficient control of moving trains. *See United States v. Seaboard Air Line R.R.*, 361 U.S. 78, 82-83 (1959) ("History showed that hundreds of workers had been injured or killed by the stopping of unbraked cars, by the operation of hand brakes, and by the use of hand couplers. This history, well known to Congress, was the primary purpose behind the legislation.") (footnote omitted).

The air brake provisions require that the braking equipment function efficiently and not be defective. *See Myers v. Reading Co.*, 331 U.S. 477, 482-83 (1947); *Fairport, Painesville & E.R.R. v. Meredith*, 292 U.S. 589, 593 (1934) (stating that the "requirement that a train shall be equipped with power brakes necessarily contemplates that they shall be maintained for use"). The SAA allows

- 6 -
Case 2:04-cv-00170-JPS   Filed 08/26/05   Page 6 of 17   Document 31

railroad employees to recover if their injury is caused or contributed to by defective or insufficient braking equipment. *Coray v. Southern Pacific Co.*, 335 U.S. 520 (1949). Importantly, the Supreme Court has stated that an employee is not precluded from recovery simply because his injury was not one that the SAA sought to prevent. *See Kernan v. American Dredging Co.*, 355 U.S. 426 (1958); *Swinson v. Chicago, St. P., M. & O. Ry.*, 294 U.S. 529, 531 (1935); *Davis v. Wolfe*, 263 U.S. 239 (1923); *Minneapolis & St. L. R.R. v. Gotschall*, 244 U.S. 66 (1917); *Louisville & N. R.R. v. Layton*, 243 U.S. 617 (1917).

To recover for a violation of the SAA, a plaintiff must show: (1) the statute was violated; and (2) the violation was "a causative factor contributing in whole or in part to the accident" that caused her injuries. *Richards v. Consolidated Rail Corp.*, 330 F.3d 428, 432 (6th Cir. 2003); *Grogg v. Missouri Pacific Railroad Co.*, 841 F.2d 210, 212 (8th Cir. 1988).

In the case at hand, the plaintiff alleges that the bracket that connected the air hose and angle cock assembly to the rail car broke and that, as a result, the angle cock assembly blew off of the brake pipe and hit the plaintiff in the face. The plaintiff argues that the bracket that broke was part of the air brake system and that the defective bracket caused his injuries. In its motion for summary judgment, WCL does not contest that the bracket is part of the air brake system

- 7 -
Case 2:04-cv-00170-JPS   Filed 08/26/05   Page 7 of 17   Document 31

or that the defective bracket was a causative factor contributing to the plaintiff's injuries.

First, WCL argues that the SAA air brake provisions do not apply in this case because the train was not moving at the time of the accident that caused the plaintiff's injuries. (WCL's brief at 8.) No language in the air brake provisions themselves, however, prevents a plaintiff from recovering if the train is stationary at the time of the accident. *See* 49 U.S.C. § 20302(a)(5)(A), (B). Other courts have applied the SAA air brake provisions where the train was not moving at the time of the accident. *See, e.g., Richards*, 330 F.3d at 432 (applying the SAA where conductor lost his footing while inspecting a stationary train after the air braking system caused the train to stop unexpectedly); *Orchelle v. CSX Transportation, Inc.*, 574 So.2d 749 (Ala. 1990) (applying the SAA where railroad switchman injured himself attempting to connect air hoses for air brakes on rail cars that were at a standstill). Courts have also explicitly rejected WCL's argument that the SAA applies only if the defect occurs while the train is in motion. *See, e.g., Missouri-Kansas-Texas R. Co. v. Evans*, 250 S.W.2d 385, 388-90 (Tex. 1952) (overruled on other grounds); *see also Trinidad v. Southern Pacific Transp. Co.*, 949 F.2d 187, 189 (5th Cir. 1991) ("Trains that have completed switching process, and departed for their destinations, are subject to requirements of Safety Appliance Act whether or not they are actually in motion when defect occurs."). The plaintiff cited a

number of cases for similar propositions, but WCL abandoned this argument in its reply brief. The fact that the train was not in motion at the time that the plaintiff sustained injuries does not entitle WCL to summary judgment.

Second, WCL argues that the train was involved in a switching operation at the time of the accident. (WCL's brief at 8-9.) "[T]he distinction between switching and train operations established in older cases remains relevant in determining whether a train is 'in use' . . . for the purposes of the [SAA]." *Trinidad*, 949 F.2d at 189; *see* 49 U.S.C. § 20302(a)(5)(A), (B) ("[A] railroad carrier may *use* or allow *to be used* on any of its railroad lines . . . a train only if . . . (the train is sufficiently equipped with power or train brakes, i.e. air brakes)). Although *Trinidad*, a Fifth Circuit opinion, held that a train was not in use until it is fully assembled and the crew has completed their predeparture inspection, the Fourth Circuit recently held that a court must look at "a number of different factors," the most important of which are "where the train was located at the time of the accident and the activity of the injured party." *Phillips v. CSX Transportation, Inc.*, 190 F.3d 285, 289 (4th Cir. 1999) (quoting *Dean v. CSX Transportation, Inc.*, 152 F.3d 326, 329 (4th Cir. 1998)). In *Deans*, for example, the Fourth Circuit held that the train was in use where the train already had its engine coupled to it and was standing on a track in the rail yard waiting in preparation for imminent departure, not in storage or waiting to be moved into

a repair location. *Id.* The injured employee was also part of the transportation crew and was in the process of releasing the hand brakes to put the train in motion. *Id.* Similarly, in the case at bar, the train had an engine coupled to it and was standing on a track waiting in preparation for imminent departure, and the plaintiff was part of the transportation crew and was in the process of connecting the air hoses to put the train in motion. According to the "in use" test articulated in the Fourth Circuit, the train in this case was "in use" at the time of the plaintiff's accident and was not involved in a "switching operation." Switching operations have been described as "switching, classifying and assembling cars within railroad yards for the purpose of making up trains." *United States v. Northern Pacific Ry.*, 254 U.S. 251, 254-55 (1920); *see also U.S. v. Seaboard Air Line R. Co.*, 361 U.S. 78 (1959) (analyzing the scope of "switching operations"). In this case, the train was not in a rail yard. As in *Brady v. Terminal R. Ass'n of St. Louis*, 303 U.S. 10, 13 (1938), the train had not been withdrawn from use and had not reached a place of repair. The train was in use even though it was motionless at the time of the accident. *Id.*

WCL's argument that the train was involved in a switching operation was stunted in its initial brief and all but abandoned in its reply brief. In its March 30, 2005 brief, WCL does not define or distinguish "train movements" from "switching movements," or even mention the statute's "in use" requirement.

Instead, WCL's analysis of the issue is captured in one sentence: "In this case, there is no dispute that plaintiff was involved in switching cars at Colloid Industries at the time of the accident." (WCL's brief at 9.) After the plaintiff's brief makes it plain that there is such a dispute, (plaintiff's brief at 5-10), WCL refers to its own argument as a "complete red herring" and only "half of the equation." (WCL's reply brief at 5.) WCL, however, continues to assert that the train was involved in a switching operation because "the train was not made fully operational." *Id.* at 8-9 (citing *Allen*, 2001 WL 1222183, at *4-5). WCL's citation to *Allen*, however, is unpersuasive. *Allen* did not cite any authority for the proposition that a train is "in use" only when it is fully operational. WCL's argument remains undeveloped, and the court concludes that WCL has not shown that the train was involved in a switching operation or was otherwise not "in use."

WCL's final argument is that the SAA is inapplicable because the plaintiff's injury did not result from the failure of the air brakes to control the movement of the train. *Erskine* and *Allen* appear to support WCL's argument. In *Erskine*, an air hose hit a railroad employee when the employee attempted to release the air in the brake system by turning the angle cock. 814 F.2d at 267. The district court distinguished "train movements" from "switching movements" and held that the SAA was inapplicable because "the locomotive was not attached to the train at the time of the plaintiff's injury and thus a switching movement was involved." *Id.*

at 269-70. The Sixth Circuit agreed that the SAA was inapplicable because the "uncontroverted evidence establishes that the train was involved in a switching movement when the injury occurred." *Id.* at 271. The court added, "Moreover, the injury did not result from a failure of the air brakes to effectively control the movement of the train." *Id.* Interpreted broadly, *Erskine* holds that the SAA is inapplicable if the train is involved in a switching movement *or* if the plaintiff's injury did not result from a failure of the air brakes to effectively control the movement of the train.

*Allen* interpreted *Erskine* broadly. In *Allen*, a railroad employee slipped on ice while the crew was attempting to stop an air leak in the air brake system. 2001 WL 1222183, at *2. The train was stationary at the time that the plaintiff sustained injuries from his fall on the ice. *Id.* *Allen* recognized that a plaintiff may recover for a violation of the SAA if he shows: (1) the statute was violated; and (2) a sufficient causal relationship exists between the violation and his injury. *Id.* at *4 (citing *Grogg*, 841 F.2d at 212). *Allen*, however, went further:

> An alleged failure must be among the safety risks sought to be covered by the SAA in order to constitute a violation of that statute. If the failure is not a safety risk contemplated by the Act, there is no liability thereunder. *Lisek v. Norfolk & Western Ry. Co.*, *supra*, at 829-30; see also *Porter v. Bangor & Aroostook R.R. Co.*, 75 F.3d 70, 71 (1st Cir. 1996); *Erskine v. Consolidated Rail Corp.*, 814 F.2d 266, 271 (6th Cir. 1987).

*Id.* at *4. Applying the principle that the alleged failure must be among the safety risks sought to be covered by the SAA, *Allen* held that the temporary freezing of an air brake component on a stationary train is not one of the safety risks intended to be covered by the SAA's air brake provision:

> The temporary freezing or sticking of an air brake component on a stationary train is not one of the safety risks intended to be covered by the SAA's air brake provision. There is nothing inherently dangerous about servicing or adjusting a rail car air brake component, and the statutory reach of the air brake provision–the ability of the locomotive engineer to control the speed or movement of the train–is not implicated when a train is safely stopped and not in motion. *See Erskine*, 814 F.2d at 271; *Porter*, 75 F.3d at 71. Further, a temporary freezing or sticking of an air brake is not properly characterized as defective braking equipment.

*Id.* at *4. Based upon *Erskine* and *Allen*, WCL states that courts have "consistently" and "uniformly" held that the SAA's air brake provisions are applicable only to moving trains and only where the injury occurred as a result of the air brake's failure to control the speed of the train. (WCL's reply brief at 4-5, 11.)

The court disagrees with the WCL's statement regarding the uniformity of the law. In *Orchelle*, a railroad employee injured his wrist attempting to connect air hoses, components of the air brake system, on rail cars that were at a standstill in a railyard. 574 So.2d at 750. The employee alleged that the couplings of the hoses were "burred" or damaged. *Id.* The Supreme Court of Alabama held that

the trial court erred by refusing to issue a jury instruction on the SAA. *Id.* at 753. The court recognized that the purpose of the SAA is to promote the safe movement of trains, but the court stated that "an employee is not precluded from recovery simply because his injury was not one that the SAA sought to prevent." *Id.* at 752 (citing *Gotschall*, 244 U.S. 66; *Kernan*, 355 U.S. 426).

After analyzing the Supreme Court opinions discussed in *Orchelle*, the court agrees that the plaintiff is not precluded from recovery simply because his injury is not one that the SAA sought to prevent. In *Swinson*, a railroad employee used a grabiron, a handhold, as a foot brace. 294 U.S. at 530. The plank attached to the grabiron split, the employee fell and sustained injuries. *Id.* The railway argued that the purpose of Congress in requiring grabirons was to supply an appliance to be grasped with the hands, not to supply an appliance to be used as a foot brace. *Id.* at 530-31. The Supreme Court determined that it was error to direct a verdict for the defendant. *Id.* at 531. The *Swinson* court stated, "The [SAA] has been liberally construed so as to give a right of recovery for every injury the proximate cause of which was a failure to comply with a requirement of the act." *Id.* The court pointed out that even though the SAA was intended for the protection of railroad employees, a traveler on a highway could recover for injury resulting from a failure of power brakes. *Id.* (citing *Meredith*, 292 U.S. 589). The court also noted that although grabirons were originally intended for "greater

security to men in coupling and uncoupling cars," an employee could recover from the failure of a grabiron even when he wasn't coupling or uncoupling cars. *Id.* (citing *Davis* 263 U.S. at 243).

In *Layton*, a railroad employee on a freight car was injured when the car collided with another car, and neither car was equipped with automatic couplers required by the SAA. 243 U.S. at 618. The railroad argued that the stated purpose of the automatic coupler requirement was to avoid "the necessity of men going between the ends of the cars," and, therefore, the SAA only applied where an employee was injured when between cars for the purpose of coupling or uncoupling them. *Id.* at 619-20. The Supreme Court refused to limit SAA violations to only those violations that interfered with the accomplishment of SAA's stated purpose:

> While it is undoubtedly true that the immediate occasion for passing the laws requiring automatic couplers was the great number of deaths and injuries caused to employees who were obliged to go between cars to couple and uncouple them, yet these laws as written are by no means confined in their terms to the protection of employees only when so engaged. The language of the acts and the authorities we have cited make it entirely clear that the liability in damages to employees for failure to comply with the law springs from its being made unlawful to use cars not equipped as required,--not from the position the employee may be in, or the work which he may be doing at the moment when he is injured. This effect can be given to the acts and their wise and humane purpose can be accomplished only by holding, as we do, that carriers are liable to employees in damages whenever the failure to obey these Safety Appliance Laws is the

- 15 -
Case 2:04-cv-00170-JPS    Filed 08/26/05    Page 15 of 17    Document 31

> proximate cause of injury to them when engaged in the discharge of duty.

*Id.* at 621. In *Davis*, the Supreme Court cited the analysis in *Layton* and articulated the following general rule:

> (An employee) can recover if the failure to comply with the requirements of the Act is a proximate cause of the accident, resulting in injury to him while in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection.

263 U.S. at 243.

WCL does not contest that a component of the air brake system, the bracket that attached the air hose and angle cock assembly to the rail car, failed or was defective and that such defect caused the plaintiff's injuries. Instead, WCL argues that the reach of the SAA is limited to only those safety risks contemplated by the Act. *See Allen*, 2001 WL 1222183, \*4. In this respect, based upon the Supreme Court's rejection of the same argument in similar contexts, the court rejects *Allen*'s analysis. Moreover, the SAA air brake provisions require trains "in use" to be equipped with non-defective air brakes; nothing in the language of the air brake provisions limits a railroad's liability to only certain types of defects or only certain types of injuries resulting from those defects.

In conclusion, the court grants WCL's motion for partial summary judgment with respect to any claim premised upon SAA's hand brake provisions and denies

- 16 -
Case 2:04-cv-00170-JPS   Filed 08/26/05   Page 16 of 17   Document 31

WCL's motion with respect to any claim premised upon SAA's air brake provisions.

Accordingly,

IT IS ORDERED that the WCL's motion for partial summary judgment be and the same is hereby GRANTED in part and DENIED in part; the court grants WCL's motion for partial summary judgment with respect to any claim premised upon SAA's hand brake provisions and denies WCL's motion with respect to any claim premised upon SAA's air brake provisions.

Dated at Milwaukee, Wisconsin, this   26th    day of August, 2005.

BY THE COURT:

s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge